CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR 24-00577-002 RFL |
|     Plaintiff, | ) |
| | ) UNITED STATES' SENTENCING |
|   v. | ) MEMORANDUM |
| | ) |
| CESIA RAMIREZ-BARAHONA, | ) Date: May 7, 2026 |
| | ) Time: 2:00 p.m. |
|     Defendant. | ) The Honorable Rita F. Lin |
| | ) |

## I.    INTRODUCTION

In February 2024, the Federal Bureau of Investigation (FBI), the Contra Costa County Major Crimes Task Force, and the Drug Enforcement Administration (DEA) began investigating a fentanyl trafficking organization responsible for distributing large quantities of fentanyl in the Bay Area. PSR ¶ 9. The investigation initially focused on co-defendant Cristel Cruz-Banegas, who had been selling fentanyl in the San Francisco Bay Area. After Cruz-Banegas was arrested by the San Francisco Police Department in April 2024, defendant Cesia Ramirez-Barahona took possession of Cruz-Banegas' phone and began communicating with one of Cruz-Banegas' drug customers. PSR ¶¶ 10-11. On April 22, 2024, Ramirez-Barahona and co-defendant Jessy Banegas-Barahona met with an undercover law enforcement officer in San Leandro and sold approximately 232 grams of fentanyl. PSR ¶ 11.

That conduct was serious. Ramirez-Barahona did not merely accompany another person to a

UNITED STATES' SENTENCING MEMO.       1
CR 24-577 RFL-002

drug deal.  She communicated with the undercover officer, confirmed the price and quantity, arrived at the deal location, retrieved the fentanyl, placed it in the undercover officer's car, and accepted the purchase money.  PSR ¶¶ 10-11.  And her conduct did not end there.  On May 31, 2024, Ramirez-Barahona was arrested by San Francisco police with fentanyl, cocaine base, Xanax, a digital scale, packaging materials, and more than $4,500 in cash.  PSR ¶ 12.  And, on November 12, 2024, while violating a stay-away order from the Tenderloin, she attempted to pass approximately 80 grams of fentanyl to another person as officers approached.  PSR ¶ 13.

At the same time, the government recognizes the mitigating circumstances identified by Probation.  Ramirez-Barahona is 21 years old, has no prior criminal convictions, experienced significant trauma during childhood and after immigrating to the United States, successfully completed a residential treatment program while on pretrial release, and faces likely deportation after serving her sentence.  PSR ¶¶ 32-35, 44-46, 54-56, 84.  These factors support a below-Guidelines sentence.

The government agrees with Probation that a sentence of 20 months is sufficient but not greater than necessary.  That sentence appropriately reflects Ramirez-Barahona's role in this case: more culpable than Jessy Banegas-Barahona, who received 18 months, but less culpable than Cristel Cruz-Banegas, who received 24 months.  PSR ¶¶ 6-7.  A 20-month sentence also recognizes the seriousness of Ramirez-Barahona's repeated fentanyl trafficking conduct while accounting for her youth, trauma, lack of criminal history, progress since arrest, and likely immigration consequences.

**II.    FACTS**

In February 2024, members of the FBI Safe Streets Task Force, the Contra Costa County Major Crimes Task Force, and the DEA initiated an investigation into a fentanyl drug trafficking organization responsible for trafficking large quantities of fentanyl.  PSR ¶ 9.  As described in more detail below, following several controlled purchases, agents obtained federal indictments and search warrants for several individuals, including Cristel Cruz-Banegas, Cesia Ramirez-Barahona, and Jessy Banegas-Barahona.  *Id*.

On April 21, 2024, an undercover officer contacted Cruz-Banegas to arrange a fentanyl transaction.  PSR ¶ 10.  At that time, law enforcement did not know that Cruz-Banegas had been arrested by the San Francisco Police Department and was in custody.  *Id*.  That same day, Ramirez-

UNITED STATES' SENTENCING MEMO.          2
CR 24-577 RFL-002

Barahona, using a phone number ending in 1603, contacted the undercover officer, represented herself as Cruz-Banegas and confirmed that the fentanyl sale could occur the following day. *Id*.

On April 22, 2024, the undercover officer communicated with Ramirez-Barahona about the price, quantity, and location of the sale. PSR ¶ 11. The parties agreed on a sale of eight ounces of fentanyl at $500 per ounce near an address in San Leandro. *Id*. Shortly after the undercover officer arrived at the meeting location, Ramirez-Barahona and Jessy Banegas-Barahona arrived. *Id*. As they approached the undercover officer's vehicle, Banegas-Barahona was holding a large black grocery bag containing the fentanyl. *Id*. Ramirez-Barahona and Banegas-Barahona opened the front passenger door of the undercover officer's vehicle, and Ramirez-Barahona told the undercover officer that "her sister, Daniela" had been arrested a week earlier in San Francisco. *Id*. Ramirez-Barahona then confirmed she was the user of the 1603 phone number, retrieved a plastic bag containing several baggies of fentanyl, and placed those baggies on the front passenger seat of the undercover officer's vehicle. *Id*. In total, Ramirez-Barahona and Banegas-Barahona sold approximately 232 grams of fentanyl. *Id*.

Ramirez-Barahona's fentanyl trafficking continued after the April 22 controlled purchase. On May 31, 2024, a San Francisco police officer observed Ramirez-Barahona standing near 1212 Market Street in San Francisco. PSR ¶ 12. The officer saw an unknown male approach Ramirez-Barahona, hand her currency, and engage in a brief conversation with her. *Id*. Ramirez-Barahona then reached into her pants pocket and pulled out a bag of suspected narcotics. *Id*. Officers arrested Ramirez-Barahona and found $4,527 in mixed currency, multiple baggies of suspected fentanyl, multiple baggies of suspected cocaine base, a baggie of suspected Xanax, a digital scale, and clear empty plastic bags. *Id*.

On November 12, 2024, San Francisco police officers again saw Ramirez-Barahona, this time near Larkin and Grove Streets in San Francisco. PSR ¶ 13. Officers knew Ramirez-Barahona was subject to a stay-away order from the area and was in violation of that order. *Id*. When officers exited their patrol vehicle, Ramirez-Barahona began walking away and handed two clear baggies of suspected fentanyl to a male civilian, who then dropped the baggies when questioned by officers. *Id*. Officers recovered the suspected fentanyl, which weighed approximately 80 grams. *Id*. A search of Ramirez-Barahona revealed $1,964 in mixed currency and a digital scale. *Id*.

On November 19, 2024, law enforcement executed search warrants at several locations

associated with Cruz-Banegas, Ramirez-Barahona and Banegas-Barahona.  Agents arrested Ramirez-Barahona as she left her home in Oakland.  PSR ¶ 15.  Agents searched an accessory dwelling unit associated with Ramirez-Barahona and located approximately 35 pounds of fentanyl, approximately three pounds of methamphetamine, and a large amount of currency.  *Id*.  The government has not attributed those narcotics to Ramirez-Barahona for Guidelines purposes because there is insufficient evidence tying the drugs and cash inside the apartment to her personally.  PSR ¶ 16.

For purposes of the Guidelines calculation, Ramirez-Barahona is responsible for the 232 grams of fentanyl distributed on April 22, 2024; the 11.2 grams of fentanyl, 7.1 grams of cocaine base, and 3.6 grams of Xanax found on her person on May 31, 2024; and the approximately 80 grams of fentanyl she passed to another person on November 12, 2024 while found in violation of a stay away order.  PSR ¶ 16.

### III.    SENTENCING GUIDELINES CALCULATIONS

The government agrees with Probation's Guidelines calculation, which is consistent with the parties' plea agreement.  *See* PSR ¶¶ 4, 20-31.  The applicable guideline is U.S.S.G. § 2D1.1.  PSR ¶ 21.  Based on the drug quantities attributable to Ramirez-Barahona, the Probation Office calculated a converted drug weight of 833.35 kilograms, resulting in a base offense level of 28.  *Id*.

There are no specific offense characteristics, victim-related adjustments, role adjustments, obstruction adjustments, or Chapter Four enhancements.  PSR ¶¶ 22-27.  Ramirez-Barahona receives a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 and a two-level reduction as a zero-point offender under U.S.S.G. § 4C1.1.  PSR ¶¶ 28-30.  Her total offense level is therefore 23.  PSR ¶ 31.

Ramirez-Barahona has no prior criminal convictions and no criminal history points, placing her in Criminal History Category I.  PSR ¶¶ 32-35.  A total offense level of 23 and Criminal History Category I results in an advisory Guidelines range of 46 to 57 months of imprisonment.  PSR ¶ 63.

### A. Applicable Law

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984,

991 (9th Cir. 2008).  Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a); *Carty,* 520 F.3d at 991.  The Guidelines should be the starting point and the initial benchmark.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives."  *Rita v. United States,* 551 U.S. 338, 350 (2007).

**B.  Recommended Sentence**

The government agrees with Probation that a downward variance is appropriate and that a sentence of 20 months is sufficient but not greater than necessary under 18 U.S.C. § 3553(a).  That sentence appropriately accounts for the seriousness of Ramirez-Barahona's repeated fentanyl trafficking while also recognizing her youth, lack of prior convictions, difficult personal history, acceptance of responsibility, successful completion of residential treatment, and likely immigration consequences.

Ramirez-Barahona distributed fentanyl, a highly dangerous drug that has caused enormous harm in this district.  Her conduct was not isolated to a single lapse in judgment.  On April 22, 2024, she arranged and completed the sale of approximately 232 grams of fentanyl to an undercover officer.  PSR ¶¶ 10-11.  Several weeks later, on May 31, 2024, she was arrested in San Francisco with multiple controlled substances, a digital scale, packaging materials, and more than $4,500 in cash.  PSR ¶ 12.  Months after that, on November 12, 2024, she was again in the Tenderloin in violation of a stay-away order and attempted to pass approximately 80 grams of fentanyl to another person as police approached.  PSR ¶ 13.  This repeated conduct matters.  Ramirez-Barahona was not merely caught up in a single transaction or acting as a passive participant.  She continued to involve herself in fentanyl distribution despite repeated contact with law enforcement, which heightens the need for specific deterrence and a sentence that reflects the seriousness of her conduct.  A meaningful custodial sentence is therefore necessary, even after accounting for the mitigating circumstances discussed below.

At the same time, the government acknowledges the significant mitigating circumstances present

UNITED STATES' SENTENCING MEMO.           5
CR 24-577 RFL-002

here.  Ramirez-Barahona is only 21 years old, has no prior criminal convictions, and accepted responsibility by pleading guilty and cooperating with Probation.  PSR ¶¶ 19, 33-35.  Probation also identified significant trauma in her background, including adverse childhood experiences, exposure to violence, sexual abuse, and the suicide of a close friend.  PSR ¶¶ 44-46, 54.  Ramirez-Barahona has also taken positive steps while this case has been pending: after her release from custody in June 2025, she entered Casa Aviva, a residential treatment program in San Francisco, and successfully completed that program in December 2025.  PSR ¶¶ 5, 56.  Although she had a compliance issue involving possession of a new Honduran passport, Probation reports no additional compliance issues.  PSR ¶ 5.  She also faces likely immigration consequences after serving her sentence.  PSR ¶¶ 60, 84.  These circumstances do not excuse her conduct or eliminate the need for a custodial sentence, but they are relevant to the Court's individualized assessment under § 3553(a), particularly given her youth, lack of criminal history, limited support, treatment progress, and likely deportation.

A 20-month sentence also avoids unwarranted disparity among the co-defendants.  Cristel Cruz-Banegas, the most culpable defendant, received a sentence of 24 months.  PSR ¶ 7.  Jessy Banegas-Barahona, the least culpable defendant, received a sentence of 18 months.  PSR ¶ 6.  Ramirez-Barahona falls between those two defendants.  She was less culpable than Cruz-Banegas, who was the original target of the investigation and whose drug dealing activities were taken over after her arrest.  But Ramirez-Barahona was more culpable than Jessy Banegas-Barahona.  Ramirez-Barahona communicated with the undercover officer, represented herself as "Daniela," confirmed the details of the drug transaction, delivered the fentanyl into the undercover vehicle, and accepted the money.  PSR ¶¶ 10-11.  In addition, unlike Jessy Banegas-Barahona, Ramirez-Barahona engaged in additional drug trafficking conduct on May 31 and November 12, 2024.  PSR ¶¶ 12-13.  Probation's recommendation of 20 months properly accounts for those distinctions.  It imposes a sentence above the 18 months imposed on Jessy Banegas-Barahona, but below the 24 months imposed on Cruz-Banegas.  That outcome reflects Ramirez-Barahona's relative role in the offense and provides a fair, proportionate sentence in the context of this case.

The government's recommended sentence of 20 months is a significant custodial sentence.  It recognizes the seriousness of Ramirez-Barahona's repeated fentanyl trafficking, the danger posed by the

UNITED STATES' SENTENCING MEMO.            6
CR 24-577 RFL-002

quantity of fentanyl involved, and the need for deterrence in cases involving the distribution of this deadly drug.  At the same time, the recommendation appropriately accounts for the mitigating circumstances present in this case, including Ramirez-Barahona's youth, lack of criminal history, acceptance of responsibility, progress since arrest, and likely deportation.  For those reasons, the government agrees with Probation that a sentence of 20 months is sufficient but not greater than necessary to satisfy the purposes of sentencing.

**IV.     CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court sentence defendant Cesia Ramirez-Barahona to 20 months of imprisonment, to be followed by three years of supervised release, and impose the conditions of supervised release recommended by the Probation Office.

DATED: April 30, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

_____/s/_____
CHARLES F. BISESTO
Assistant United States Attorney